IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARRIE BREECH, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-0025 |
| | § | |
| DEPUY SPINE, INC., | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendant Depuy Spine, Inc.'s Motion for Summary Judgment (Dkt. # 37) and Motion for Partial Summary Judgment on Plaintiff's Retaliation Claim (Dkt. #70). After considering the parties' arguments and the applicable law, the court is of the opinion that Defendant's Motion for Summary Judgment should be DENIED and that Defendant's Motion for Partial Summary Judgment on Plaintiff's Retaliation Claim should be GRANTED.

**Factual and Procedural Background**

On December 5, 2003, Plaintiff Carrie Breech was terminated from her job at DePuy Spine, Inc.("DePuy"), a subsidiary of Johnson & Johnson ("J&J"). Breech began working for DePuy in January 2001, in the company's Massachusetts' marketing department. Upon learning that her husband's job was requiring him to relocate to Houston, Breech contacted Glen Wambolt, DePuy's Director of Human Resources about possible job opportunities in the Houston area. Wambolt arranged an interview for Breech in the newly-created Orthobiologics Sales Organization as an area Orthobiologics Specialist ("AOS"). Breech was hired for the position after interviewing with Area Vice President ("AVP"), Tom Slott. On January 1, 2003, Breech began her position as an AOS for the Central area, initially reporting to Slott. Three male sales employees of DePuy were promoted

to AOS positions as well. Craig Furr transferred to the AOS position for the South area, Todd Stohler for the West area, and Brandon Keith for the East area. Breech and each of her male colleagues represented a different geographic area, reported to a different AVP, and supported a different group of sales employees known as Orthobiologics Specialists ("OS"). On January 25, 2003, Jeff Rydin was made the official AVP for Orthobiologics, and the four AOSs began reporting directly to him.

Shortly after the plaintiff began her work as an AOS, her supervisor Tom Slott allegedly commented that he was relieved Breech was not a "women's libber." Breech points to other instances during her employment with DePuy where Slott would allegedly exhibit gender bias. For example, Breech alleges that Slott had a reputation of having difficulty working with women employees, and recalls one instance in particular when Slott expressed distaste for having an aggressive saleswoman on staff, though he had apparently overlooked this characteristic when considering male candidates.[1] In July 2003, Depuy decided to eliminate its orthobiologics sales model. Specifically, DePuy opted to eliminate the position of AVP for Orthobiologics, all Region Manager positions, and all orthobiologics sales jobs, including the OS and AOS positions. At the same time, the company was expanding the number of geographic sales areas from four to seven, thereby increasing the number of Corporate Account Managers ("CAM") and creating two new positions known as Area Business Director ("ABD") and Area Sales Manager ("ASM").

New AVPs were selected for the seven geographic areas and were then given the responsibility of selecting their respective ASMs. Breech's male counterparts in the AOS positions

---

[1] Mike Huez, the employee selected by Slott as an Area Sales Manager rather than Breech, was noted in his employment file as having a problem concerning "aggressiveness with his people." *See* Dkt. #51, Ex. 35.

2

were offered ASM positions within the company. Furr and Keith were selected as ASMs for the South and Atlantic areas, respectively. Stohler was offered the ASM position for the Midwest area. Tom Slott remained AVP for the Central area, and after considering both Breech and Mike Huez (then region manager for the Midwest area) for his area's ASM position, Slott selected Huez. According to Breech, Huez was the less qualified candidate.

Breech received a letter on December 2, 2003, informing her that her position with DePuy was being eliminated effective December 15, 2003. She was the only female AOS, and notably, the only AOS not to be reassigned to a new position. On December 4, 2003, two days after Breech received her termination letter, she sent an email to Earl Fender, Worldwide President of DePuy, with a copy to Wambolt, alleging discrimination on the basis of her sex. She requested fourteen additional weeks of separation pay, but mentioned nothing of continued employment with DePuy. Wambolt called Breech on December 11, 2003 to discuss her discrimination complaint and to provide Breech with information on J&J's internal dispute-resolution program, *Common Ground*. During the conversation, Wambolt confirmed that there was an open CAM position in Texas and that Breech could bid on it, though not as an internal employee of DePuy. Accounts differ over whether Breech expressed interest in the position over the phone.

On December 19, 2003, Susan O'Connor, DePuy's Vice President for Human Resources, sent Breech a letter officially denying Breech's request for more separation pay. In the letter, O'Connor wrote that the reason Breech was not offered another position within the company was that she was unwilling to relocate. According to Breech, she had never told anyone within the company that she was unwilling to relocate. In fact, Breech's employment files indicated that she was willing to

3

relocate.[2]  Despite Breech's employment files to the contrary, DePuy insists that Breech told numerous people that she was unable to relocate, including both Glen Wambolt and Jeff Rydin. However, Glen Wambolt has since testified that it was Rydin who notified him that Breech was unwilling to relocate.[3]  Wambolt alleges that Breech told him of her unwillingness to relocate, but not until his conversation with her on December 11, 2003, more than a week after she had been terminated.[4]  Rydin, on the other hand, has since testified that Breech *never* indicated to him that she was unwilling to relocate.[5]

Along with the denial of Breech's request for more separation pay, O'Connor also recommended in her letter that Breech participate in *Common Ground*.  Breech proceeded through the first two of *Common Ground*'s three phases and then abandoned the process and filed a gender discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  During the time leading up to the EEOC filing, Breech neither bid on another position with DePuy or J&J, nor was she offered another position with either company.

After receiving her right to sue letter from the EEOC, Breech filed her complaint in state court, alleging sex discrimination under Chapter 21 of the Texas Labor Code, which is patterned after Title VII.  *See* TEX. LAB. CODE § 21.001; *see also Baehler v. Fritz Indus., Inc.*, 993 S.W.2d 181, 183

---

[2] DePuy's employment files contained annual Talent Scope employee summary cards. These cards included a "Willing to Relocate" section, with three adjacent boxes labeled "Yes," "No," or "Maybe," indicating the employee's decision. On Breech's card, the "Yes" box had been checked.  *See* Dkt. #51, Ex. 16.

[3] *See* Dkt. #78, Ex. 51, p. 140.

[4] *See* Dkt #51, Ex. 7, p. 131.

[5] *See id.* at 105.

4

(Tex. App.—Texarkana 1999, pet. denied) (stating that Texas courts rely on precedent under Title VII of the Civil Rights Act when construing Chapter 21 of the Texas Labor Code). The case was subsequently removed to this court on diversity grounds.

DePuy filed its Motion for Summary Judgment on January 3, 2006. (Dkt. #37). The same day, Breech filed her Third Amended Complaint (Dkt. #34), alleging a retaliation cause of action. Consequently, DePuy filed its Motion for Partial Summary Judgment on Plaintiff's Retaliation Claim on April 17, 2006. (Dkt. #70). Breech then filed her Response to DePuy's Motion for Summary Judgment on February 7, 2006 (Dkt. #50) and her Response to the Motion for Partial Summary Judgment *on retaliation claim* on May 15, 2006. (Dkt. #78). DePuy replied to both of Breech's responses. On February 13, 2006, the company filed its Reply in Support of Motion for Summary Judgment (Dkt. #60), and on July 21, 2006, it filed a Reply in Support of Motion for Partial Summary Judgment *on retaliation claim*. (Dkt. #84).

## Discussion

### I. Summary Judgment Standard

Summary Judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is "material" if its

resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the nonmoving party to demonstrate that there is a genuine issue of material fact. *Id. at 322.* If the moving party fails to meet this burden, then it is not entitled to a summary judgment and no defense to the motion is required. *Id*. When determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255.

## II. Retaliation Charge

DePuy moves for summary judgment on the plaintiff's retaliation claim, alleging that the plaintiff has neither met the requisite elements of a retaliation claim, nor has she exhausted her administrative remedies on the claim prior to bringing this lawsuit. The court will address each argument below.

### A. Elements of Retaliation

A retaliation claim has three elements: (1) the employee engaged in activity protected by Title VII; (2) the employee experienced an adverse action following the protected activity; and (3) a causal connection exists between the protected activity and the adverse employment action. *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 330 (5th Cir. 2004); *Walker v. Thompson*, 214 F.3d 615, 628-29 (5th Cir. 2000).

The court finds that the plaintiff's retaliation claim does not satisfy the second and third elements. Here, the alleged discriminatory action occurred *before* the plaintiff engaged in any action protected by Title VII. The plaintiff in this case based her original gender discrimination claim on the fact that DePuy terminated the four AOS positions, but retained her male counterparts while failing to offer *her* another available position within the company for which she was qualified. Now the plaintiff contends that DePuy refused to offer her another position within the company because they were acting in retaliation for her December 4 letter. It appears obvious from her earlier allegations, however, that DePuy's decision to terminate the plaintiff, whether discriminatory or not, had already been made prior to the plaintiff engaging in protected action. More significantly, this fact is demonstrated by DePuy's use in October 2003 of employees' Talent Scope files to indicate whether the company was interested in retaining them after the reorganization. While the male candidates' files noted the new positions they were to receive after the reorganization, the plaintiff's October 1, 2003 Talent Scope file read, "Next Move: *no immediate need in business*."[6] This indicates to the court that DePuy's decision to extend employment offers to only Breech's male colleagues and not to Breech herself had been made as early as October 1, 2003. The plaintiff claims that regardless of when the termination decision was made, DePuy failed to offer her a position after December 15, 2003 when she was the only qualified candidate and still on the company payroll as an employee. While the court agrees that the plaintiff was still receiving pay as part of her severance package, it is clear that as of December 15, 2003, Breech was no longer an active employee of the company.

---

[6] *See* Dkt. #51, Ex. 12.

Furthermore, whether she gave them notice at that time that she was interested in the CAM position is irrelevant. After December 15, 2003, DePuy had no duty under company policy to offer her the available CAM position, and the fact remains that she never bid on the position. At best, the company followed its policy in reviewing bidding applicants, and at worst, they were adhering to their original discriminatory decision to terminate her while keeping her male counterparts. Because the court finds that any adverse or discriminatory action by DePuy occurred *before* the plaintiff engaged in protected activity, the court finds that the plaintiff cannot meet the second and third elements of a retaliation claim—she can neither show that the adverse response occurred *after* she engaged in protected action, nor that a causal connection exists between the protected activity and the adverse action.

### B. Exhaustion of Administrative Remedies

Besides meeting the elements of a discrimination cause of action, a plaintiff must first exhaust his or her administrative remedies by filing a charge of discrimination with the EEOC before the plaintiff may seek judicial relief. *Dollis v. Rubin*, 77 F.3d 777, 781 (5th Cir. 1995). Although filing of an EEOC charge is not a jurisdictional prerequisite, it is a precondition to filing suit in district court. *Taylor v. Books a Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). A civil lawsuit filed under Title VII is limited in scope and may encompass only the discrimination stated in the EEOC charge itself or developed in the course of a reasonable EEOC investigation of that charge. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711-12 (5th Cir. 1994); *see also Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000). Failure to assert a claim in the charge or its lack of development in the course of a reasonable investigation of the

charge precludes a plaintiff from later lodging the claim in a civil suit. *Nat'l Ass'n of Gov't Employees*, 40 F.3d at 712.

The plaintiff here did not assert retaliation in her EEOC charge. She neither checked the box marked "retaliation" nor indicated in the narrative portion of the charge that she was alleging retaliatory action. In fact, the plaintiff lists December 2, 2003, the day she was notified of her termination, as the last day that discrimination occurred. Yet here she claims in her third amended complaint that her December 4 internal complaint letter to the DePuy president provoked the company's retaliation against her. She alleges that DePuy, upon receiving her letter, further violated Title VII by failing to offer her one of the available positions for which she was qualified after December 15, 2003.

While the plaintiff correctly states that in some cases, failure to check the "retaliation" box does not render a plaintiff's claim fatal, the facts here do not support such a finding. *See Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981) (holding that filing a charge for retaliation was unnecessary when the claim grows out of a previously filed EEOC charge). Because retaliation claims, by definition, usually arise after the filing of the EEOC charge, the court in *Gupta* reasoned that its holding promoted efficiency by requiring only one filing. *Id.* However, other circuit courts, along with lower courts in the Fifth Circuit, have distinguished this rule when the retaliatory conduct occurs prior to the filing of the EEOC complaint. In such cases, no unnecessary double filing is required by demanding that plaintiffs allege retaliation in the original EEOC charge. *Ang. v. Procter & Gamble Co.*, 932 F.2d 540 (6th Cir. 1991); *see also Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988); *McCray v. DPC Industries, Inc.*, 942 F. Supp. 288 (E.D. Tex. 1996)

(holding that where the alleged retaliation occurs before the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies on that claim).

Breech alleged that DePuy retaliated against her after December 15, 2003, but she filed the EEOC charge on February 17, 2004. The court therefore finds that any retaliatory conduct by the defendant necessarily occurred prior to Breech filing her EEOC charge. Furthermore, she had over two months from the date she was terminated in which to allege such a claim, but her EEOC charge mentioned nothing of it. Even after she retained legal representation, the charge was never amended to show retaliation. As a consequence, the EEOC review did not include an investigation of retaliatory action, nor could it reasonably have been expected to under the facts alleged in the charge. For these reasons, the court finds that the plaintiff failed to exhaust her administrative remedies, and summary judgment regarding her retaliation claim is appropriate.

### III. Gender Discrimination

As to Breech's original claim of gender discrimination, the court finds that genuine issues of material fact exist and therefore denies DePuy's Motion for Summary Judgment.

### Conclusion

Based on the foregoing discussion and analysis, Defendant's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment On Plaintiff's Retaliation Claim is GRANTED.

Signed at Houston, Texas on August 18, 2006.

_____
Gray H. Miller
United States District Judge